OPINION OF THE COURT
 

 Graffeo, J.
 

 These appeals arise from a dispute between a bank and certain of its corporate customers who were engaged in foreign currency exchange trading transactions. The parties’ competing claims were adjudicated in a consolidated action. Each side obtained a judgment after a jury trial, with plaintiff bank’s recovery exceeding that of defendants. The merits of the parties’ claims are not before us. Instead, our focus is on the narrow issue of whether an attorney’s charging lien acquired by defendants’ attorneys on their successful cause of action is entitled to priority over plaintiffs right to set off its larger judgment against defendants. Under the facts and circumstances presented, we hold that the attorneys’ lien is subordinate to plaintiffs setoff rights.
 

 In New York, an attorney’s charging lien is governed by statute (
 
 see
 
 Judiciary Law § 475). However, even before the
 
 *38
 
 Legislature enacted section 475 or any of its predecessors, attorneys’ liens had been “recognized and enforced by the courts from very early times”
 
 (Matter of City of New York,
 
 5 NY2d 300, 307 [1959],
 
 cert denied sub nom. United States v Coblentz,
 
 363 US 841 [I960]). As this Court observed in
 
 Goodrich v McDonald
 
 (112 NY 157, 163 [1889]), under the common law, the attorney’s lien “was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.”
 

 In 1879, the Legislature amended section 66 of the Code of Civil Procedure to provide that
 

 “[flrom the commencement of an action or the service of an answer containing a counter-claim, the attorney who appears for a party has a lien upon his client’s cause of action or counter-claim, which attaches to a verdict, report, decision, or judgment in his client’s favor, and the proceeds thereof in whosoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment” (L 1879, ch 542).
 
 [1]
 

 Thus, by the end of the nineteenth century, New York statutes and case law gave attorneys lien rights that arose from the client’s claim and merged with the verdict or judgment, attaching to the “proceeds thereof’
 
 (see Fischer-Hansen v Brooklyn Hgts. R.R. Co.,
 
 173 NY 492, 497-498 [1903]).
 

 Although this provision was recodified in 1909 as section 475 of the Judiciary Law
 
 (see
 
 L 1909, ch 35) and was subsequently amended to encompass proceedings before most state
 
 (see
 
 L 1936, ch 876), federal
 
 (see
 
 L 1938, ch 34) and municipal
 
 (see
 
 L 1946, ch 105) departments, the statutory language underlying an attorney’s charging lien remained relatively unchanged for over a century. Judiciary Law § 475 currently reads:
 

 “From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client’s cause of action,
 
 *39
 
 claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client’s favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.”
 

 The central issue in these appeals concerns the long-standing controversy over the priority between an attorney’s lien on a client’s award versus an adverse party’s right to offset its judgment against that client. Here, the priority controversy arose incident to a dispute between plaintiff Banque Indosuez,
 
 [2]
 
 a bank organized under the laws of France but authorized to conduct business in New York, and five investment firms that were formed to conduct foreign exchange trades through the Bank. All five companies — Sopwith Holdings Corp., Algol Investment Company Limited, Trisha Investments Limited, Optimum Investments, Inc. and Hungarian Investments, Inc.— are incorporated under the laws of the British Virgin Islands and maintain their principal places of business in Caracas, Venezuela.
 

 Each company executed a contract with the Bank entitled “Foreign Exchange Line with Cash Margin Requirement” (the Agreements), which set forth the rights and liabilities of the parties, including the procedure for entering into foreign currency transaction contracts, the minimum collateral requirements for the accounts and the parameters of the Bank’s control of the collateral. Notably, the Agreements also provide that the Bank may recover attorneys’ fees, costs and disbursements “incurred by the Bank in connection with the preparation, negotiation, enforcement and amendment of this Agreement and the preservation of the Bank’s rights hereunder and under any Contract.”
 

 In 1994, the Bank commenced an action for breach of contract and account stated against Sopwith, Algol, Trisha and Optimum to recover losses from their trading accounts maintained with the Bank. Those companies, along with Hungarian, then brought suit against the Bank, asserting it engaged in unauthorized trading and attributing the losses they suffered to the Bank’s unauthorized trades. Sopwith,
 
 *40
 
 Trisha and Hungarian (the Sopwith defendants) also pursued claims for conversion, contending that the Bank wrongfully retained collateral from their accounts to cover the alleged trading losses of Algol and Optimum. Ultimately, these two actions were consolidated by Supreme Court.
 
 [3]
 

 Following a jury trial, the Bank prevailed on its breach of contract claim and received a $3.1 million verdict only against Algol and Optimum; that judgment is not at issue in these appeals. Although the jury rejected the unauthorized trading claims against the Bank, the Sopwith defendants were awarded $2.4 million on their cause of action for conversion. The jury determinations were upheld on appeal (see 257 AD2d 519 [1st Dept],
 
 lv denied
 
 93 NY2d 806 [1999]).
 

 A flurry of postjudgment litigation ensued. Relevant to these appeals, the law firm of Katz, Barron, Squitero, Faust & Berman; P.A. (Katz, Barron), attorneys for the Sopwith defendants in the underlying litigation, moved for an order enforcing an attorney’s lien under Judiciary Law § 475, based on a retainer agreement between the law firm and the Sopwith defendants, against their clients’ $2.4 million award.
 

 After Supreme Court granted Katz, Barron’s motion,
 
 [4]
 
 the Bank responded with a motion for reargument. Relying on its Agreements with the Sopwith defendants, the Bank contended that it was owed over $7 million in attorneys’ fees, costs and disbursements in connection with the successful litigation of its breach of contract cause of action and its defense against the unauthorized trading claims. It maintained that the Katz, Barron lien should attach only to net proceeds, if any, due to the Sopwith defendants after the deduction of the Bank’s contractual fees and expenses from the Sopwith defendants’ $2.4 million judgment. Supreme Court disagreed, finding that although the Sopwith defendants’ judgment should be set off against any attorneys’ fees or costs awarded to the Bank, the charging lien was superior and should be paid prior to the setoff. The Appellate Division affirmed (see 275 AD2d 662 [1st Dept 2000]).
 

 
 *41
 
 The Bank’s request for attorneys’ fees, costs and disbursements was then considered by Supreme Court. Citing paragraph 10 (b) of the Agreements,
 
 [5]
 
 the court held that the Bank was entitled to recover legal fees since it prevailed on the unauthorized trading claims, the prevalent issue in the underlying litigation. Calculation of the amount due was assigned to a special referee, and the parties eventually agreed to the entry of judgment in favor of the Bank in the amount of $3.5 million against all defendants jointly and severally.
 

 With the amounts awarded to the parties finally determined, Supreme Court directed the Bank to pay Katz, Barron’s charging lien in the sum of $860,666.64 from the Sopwith defendants’ $2.4 million judgment before allowing the Bank to set off its $3.5 million judgment for attorneys’ fees and costs. Thus the Bank, having prevailed against defendants on the unauthorized trading claims and been awarded the larger judgment, was obligated first to pay defendants’ counsel before it could pursue its own right of offset. We granted the Bank leave to appeal, bringing up for review the Appellate Division’s order affirming the priority of the attorneys’ lien over the Bank’s right of setoff. As part of the order directing payment of the lien, Supreme Court and the Appellate Division also held that the law firm was not entitled to postjudgment interest on the charging lien
 
 (see
 
 288 AD2d 91 [1st Dept 2001]). We granted the Sopwith defendants leave to appeal the postjudgment interest issue and both appeals were joined.
 

 For as long as courts have recognized and enforced attorneys’ liens, there has been tension between an attorney’s right to collect under a charging lien and an adverse party’s right to a setoff — specifically, which has priority over the other. As Judge Cardozo artfully described, this issue “revives the smouldering fires of an ancient judicial controversy”
 
 (Beecher v Vogt Mfg. Co.,
 
 227 NY 468, 469 [1920]). In the 82 years since that observation, this issue continues to ignite priority controversies in different contexts.
 

 Priority disputes can be traced back in this state’s jurisprudence to
 
 Mohawk Bank v Burrows
 
 (6 Johns Ch 317 [1822]), where the Court of Chancery held the right of setoff superior to an attorney’s lien. The court adopted the “clear balance” view
 
 *42
 
 of the English Court of Common Pleas, which declared that only “the result of the equity between the parties” was subject to the attorney’s lien
 
 (id.
 
 at 321 [internal quotation marks omitted]). In
 
 Dunkin v Vandenbergh
 
 (1 Paige Ch 622, 625 [1829]), the Court of Chancery provided further clarification by examining “whether the costs in different and independent suits can be off set against each other to the exclusion of the attorney’s lien.” The court concluded that:
 

 “Where different claims arise in the course of the same suit, or in relation to the same matter, it is undoubtably equitable and just that these equities should be arranged between the parties without reference to the solicitor’s or attorney’s lien. His lien is only on the clear balance due to his client after all these equities are settled. But when other claims, arising out of different transactions and which could not have been a legal or equitable set-off in that suit, exist between the parties, the court ought not to divest the lien of the attorney or solicitor which has already attached on the amount recovered for the costs of that particular litigation”
 
 (id.
 
 at 625-626).
 

 The pendulum apparently swung the other way in
 
 Nicoll v Nicoll
 
 (16 Wend 446 [1836]), when the Court for the Correction of Errors subordinated an attorney’s lien to a right of setoff from a prior, unrelated judgment. Not surprisingly, this Court later noted that there remained “some confusion in the authorities” regarding the question whether an attorney’s lien is superior to an adverse party’s right to offset a judgment
 
 (Perry v Chester,
 
 53 NY 240, 243 [1873]).
 

 The enactment of Judiciary Law § 475 did not resolve these priority controversies. For example, in
 
 Beecher,
 
 attorneys for the Vogt Manufacturing Company acquired a lien on a money judgment recovered by their client against Beecher and Smith. The two judgment debtors then obtained an assignment of a money judgment held by the German-American Bank of Buffalo against Vogt and sought to set off the assigned judgment, which would have defeated Vogt’s attorneys’ lien. This Court, emphasizing that the attempted setoff arose from “separate transactions,” determined that the attorneys’ lien had priority (227 NY at 472-473).
 

 Similarly,
 
 LMWT Realty Corp. v Davis Agency
 
 (85 NY2d 462 [1995]) involved a priority dispute between an attorney’s lien
 
 *43
 
 and a tax lien. In
 
 LMWT,
 
 the attorneys secured a settlement of an insured property owner’s fire loss claim against the insurer. A question arose as to whether the attorneys’ charging lien against the settlement proceeds should be given priority over a preexisting City of New York lien for unpaid property taxes. This Court determined that the attorneys’ lien was superior to the City’s tax lien. Notably, the tax lien did not arise from the insured-insurer relationship, nor was the tax lien related to the fire loss settlement negotiated by the attorneys.
 

 Our decisions in
 
 Beecher
 
 and
 
 LMWT
 
 indicate that an attorney’s charging lien maintains superiority over a right of set-off where the setoff is unrelated to the judgment or settlement to which the attorney’s lien attached. However, we conclude that a different rule should apply here, where the setoff is the result of judgments emanating from the same transaction or instrument.
 

 In this case, both the Bank’s judgment for attorneys’ fees and costs and the Sopwith defendants’ judgment for conversion share a common origin — the rights and obligations in the parties’ Foreign Exchange Agreements. These Agreements detail, among other things, how the Bank is to handle the collateral in the Sopwith defendants’ foreign currency trading accounts. It follows that these Agreements are at the heart of whether the Bank converted these funds, which is the basis of the Sopwith defendants’ $2.4 million judgment. Moreover, it is the Agreements that contain the Bank’s explicit right to attorneys’ fees and costs. Thus, because the proposed setoff arises from the underlying customer-bank written agreements, the balancing of equities between the parties leads us to conclude that the Bank’s judgment should be accorded priority over its adversaries’ attorneys’ charging lien.
 
 [6]
 
 *8
 

 This result is consistent with the statutory framework regarding attorneys’ liens. It is well settled that, under section 475, an attorney’s charging lien comes into existence, without notice or filing, upon commencement of the cause of action or proceeding
 
 (see LMWT,
 
 85 NY2d at 467;
 
 Beecher,
 
 227 NY at 471). But since its enactment, the statutory provision has limited such lien rights to outcomes where “proceeds” have been obtained “in [a] client’s favor” (Judiciary Law § 475;
 
 see
 
 
 *44
 

 also LMWT,
 
 85 NY2d at 470;
 
 Robinson v Rogers,
 
 237 NY 467, 473 [1924];
 
 Goldstein, Goldman, Kessler & Underberg v 4000 E. Riv. Rd. Assoc.,
 
 64 AD2d 484, 488 [4th Dept 1978],
 
 affd on op below
 
 48 NY2d 890 [1979]). In other words, the litigation or settlement must result in more than the mere entry of a judgment on behalf of a client: there must be proceeds from the litigation upon which the lien can affix. We therefore hold that where competing claims arise out of the same transaction or instrument, an attorney’s charging lien under section 475 will be recoverable against the client’s net recovery, if any, after offsetting the parties’ judgments. Here, the Sopwith defendants won no net recovery because the Bank’s $3.5 million judgment against them exceeded their $2.4 million judgment against the Bank. There are simply no funds remaining from the Sopwith judgment from which Katz, Barron may collect its lien.
 

 Given this holding, the appeal in the companion case challenging the Appellate Division’s denial of statutory postjudgment interest on the attorneys’ charging lien is academic.
 

 Accordingly, in case number 36, the judgment appealed from and order of the Appellate Division brought up for review should be reversed, with costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion. In case number 37, the appeal should be dismissed, without costs, as academic.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 In
 
 Banque Indosuez v Sopwith Holdings Corp.
 
 (case No. 36): Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.
 

 In
 
 Banque Indosuez v Sopwith Holdings Corp.
 
 (case No. 37): Appeal dismissed, without costs.
 

 [1]
 

 . This provision was amended in 1899 to include special proceedings
 
 (see
 
 L 1899, ch 61).
 

 [2]
 

 . The Bank is now known as Crédit Agricole Indosuez.
 

 [3]
 

 . Two other related actions involving the Bank against three shareholders of these companies were later consolidated with these lawsuits as well, but neither suit is relevant to the present appeals.
 

 [4]
 

 . Supreme Court initially calculated the charging lien based on a retainer agreement that was executed after the jury determination. Subsequently, the court determined that the operative retainer agreement was one executed prior to entry of the verdict — which provided for a 40% fee “of all amounts recovered.”
 

 [5]
 

 . That provision states:
 

 “The Customer will pay the costs and disbursements (including all fees and costs of counsel) incurred by the Bank in connection with the preparation, negotiation, enforcement and amendment of this Agreement and the preservation of the Bank’s rights hereunder and under any Contract.”
 

 [6]
 

 . We note that this holding is in accord with other jurisdictions that have addressed the priority between an attorney's hen and a setoff that arose from the same transaction
 
 (see generally
 
 Zitter, Annotation,
 
 Priority Between Attorney’s Charging Lien Against Judgment And Opposing Party’s Right Of Setoff Against Same Judgment,
 
 27 ALR5th 764 [1995]).