In April 2008, plaintiff Eleni Papaioannou signed a retainer agreement with Levine & Grossman, Esqs. for her personal injury claims, and the loss of services claim of her husband, resulting from the collapse of a crane onto her apartment building while she was in the apartment. Thereafter, the firm filed a notice of claim with the City of New York. The Laskin firm was substituted as counsel for the Papaioannous in April 2010.
One week after Mrs. Papaioannou executed the retainer agreement with Levine & Grossman, her husband, Demetrios Papaioannou, apparently without her knowledge, engaged Verzani to handle claims against the Papaioannous’ landlord, who had refused to restore the building and was attempting to evict the tenants. In a letter retainer agreement, Verzani stated that his office “will not handle Mrs. Papaioannou’s claim for personal injury with regards to her being present in the building at the time of the accident as [he] [has] been informed she has retained separate counsel.” On June 16, 2008, Verzani commenced an action (the Ascot action) against Ascot Properties, the owner of the building, naming the Papaioannous and three other tenants of the building, seeking declaratory relief obligating the owner to restore the damaged apartments and restore *406 the tenants to their apartments, and damages for unlawful eviction. On August 7, 2008, Verzani filed an amended summons and complaint, adding causes of action for negligent and intentional infliction of emotional distress arising out of the landlord’s willful failure to restore the tenants to their tenancies, which allegedly caused the tenants to experience physical and emotional injuries.
On August 27, 2008, a general release in the Ascot action was signed by the Papaioannous. Their claims were settled for $700,000 as part of the total settlement of $2 million. The release includes language that the landlord failed to take any action to restore the tenants to their apartments, and that as a result, the tenants began to experience physical and emotional injuries. The tenants agreed to release all claims to their apartments. The release provided that it shall not preclude either party from bringing claims against the crane operator, the City, or any other entity related to the crane collapse.
On April 6, 2009, nearly 10 months after the Ascot action was commenced and approximately seven months after it was settled, a summons and complaint was filed by Levine & Gross-man (counsel prior to the substitution of the Laskin firm) on behalf of the Papaioannous — not against Ascot Properties — but against various contractors, crane operators and the City of New York (the Reliance action), alleging that Eleni Papaioannou was in the apartment when the crane collapsed, causing her to suffer severe and protracted personal injuries, and seeking damages for her personal injuries and Mr. Papaioannou’s loss of services. In November 2009, a General Municipal Law § 50-h hearing was conducted by the City. In May 2011, at the deposition of Mrs. Papaioannou in the Reliance action, the general release from the Ascot action was marked as an exhibit and shown to her. She testified that it was her signature on the release, but that she had never before seen the release. According to Michelle Laskin, Esq., it was then that she was first told by Mr. Papaioannou that he had retained the Verzani law firm and had received a $700,000 settlement, with one third going to Verzani as an attorney’s fee. Mr. Papaioannou is said to have admitted that his wife had no knowledge of the Ascot action, of the general release or of the money received in the settlement.
The motion court erred in granting Laskin Law EC.’s petition to enforce an attorney’s lien pursuant to Judiciary Law § 475 in the Ascot action and denying Verzani’s cross motion to dismiss the petition. The statute provides that “[flrom the commencement of an action . . . the attorney who appears for a party has a lien upon his client’s cause of action . . . which attaches to a *407 verdict, report, determination, decision, judgment or final order in his client’s favor” (§ 475). The Laskin firm cannot have a charging lien on the settlement proceeds in the Ascot action where it never commenced an action against Ascot and thus was never attorney of record for the Papaioannous in the Ascot action, but instead commenced an action against other parties, months after the Ascot action was filed and settled. Rather, the remedy available to the Laskin firm is a plenary action (see e.g. Rodriguez v City of New York, 66 NY2d 825, 827 [1985] [where the attorney’s name “never appeared on any of the pleadings, motion papers, affidavits, briefs or record in plaintiffs action,” “it is clear that (he) is not entitled to seek an attorney’s lien under Judiciary Law § 475 and must enforce such rights as he may have in a plenary action”]; see also Weg & Myers v Banesto Banking Corp., 175 AD2d 65, 66 [1st Dept 1991] [Judiciary Law § 475 grants charging lien to attorney only when there has been appearance by attorney in the action]; Max E. Greenberg, Cantor & Reiss v State of New York, 128 AD2d 939 [3d Dept 1987], lv denied 70 NY2d 605 [1987] [while firm was attorney of record in State court action and provided legal services to client for which it may be entitled to compensation, firm not entitled to a lien under Judiciary Law § 475 for proceeds of a settlement in Federal court action where it was not attorney of record in settled Federal action and not the firm that produced settlement]). Concur — Friedman, J.P, Sweeny, DeGrasse, AbdusSalaam and Román, JJ.
The Decision and Order of this Court entered herein on May 10, 2012 (95 AD3d 583 [2012]) is hereby recalled and vacated (see 2012 NY Slip Op 85979[U] [decided simultaneously herewith]).