Jose **GALVEZ**, Eligio Hernandez, Douglas Lund, Donald A. Morris, and William Schafer, Plaintiffs,

v.

**ASPEN CORPORATION** and/or Aspen Irrigation Inc. and/or Management Consulting Laborers and any related corporate entities, Donald Adkins, Ronald Adkins, and the Cincinnati Insurance Company, Defendants.

No. 09–cv–4493 (WFK)(AKT).

United States District Court, E.D. New York.

Aug. 23, 2013.

Lloyd Robert Ambinder, Virginia & Ambinder LLP, New York, NY, for Plaintiffs.

Jeltje DeJong, Joshua S. Shteierman, Kelly E. Wright, Devitt Spellman Barrett, LLP, Smithtown, NY, for Defendants.

## MEMORANDUM AND ORDER

WILLIAM F. KUNTZ, II, District Judge.

On July 18, 2013, United States Magistrate Judge Kathleen Tomlinson issued a report and recommendation recommending that this Court deny a motion by Plaintiffs' counsel to enforce a charging lien upon

Defendants pursuant to New York Judiciary Law § 475. Dkt. No. 42. For the reasons set forth below, Magistrate Judge Tomlinson's report and recommendation is ADOPTED in its entirety. Accordingly, the Court DENIES the motion by Plaintiffs' counsel to enforce a charging lien upon Defendants pursuant to New York Judiciary Law § 475.

The facts in this action are meticulously detailed in Magistrate Judge Tomlinson's report and recommendation, and will not be restated here. *See id.* Neither party has objected to the report and recommendation.

A district court reviewing a report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also McGrigs v. Killian,* No. 08 Civ. 6238, 2009 WL 3762201, at *2 (S.D.N.Y. Nov. 10, 2009) (Berman, J.). Under 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, parties may object to a magistrate judge's report and recommendation. The objections must be "specific" and "written," and they must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed.R.Civ.P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

■■■ Where, as here, a party does not object to a report and recommendation, "a district court need only satisfy itself that there is no clear error on the face of the record." *Reyes v. Mantello,* No. 00 Civ. 8936, 2003 WL 76997, at *1 (S.D.N.Y. Jan. 9, 2003) (Cote, J.); *see also Eisenberg v. New England Motor Freight, Inc.,* 564 F.Supp.2d 224, 226 (S.D.N.Y.2008) (Marrero, J.) ("A district court evaluating a Magistrate Judge's report and recommendation may adopt those portions of the ... report to which no 'specific written objection' is made, as long as the factual and legal

bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law.") (quoting Fed.R.Civ.P. 72(b)(2)). In addition, a party's "failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision." *F.D.I.C. v. Hillcrest Assocs.,* 66 F.3d 566, 569 (2d Cir.1995). Moreover, in this case, the report and recommendation explicitly stated that "[p]ursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections," and that "[f]ailure to file objections will result in a waiver of those objections for purposes of appeal." Dkt. No. 42 at 629–30.

No objections to Magistrate Tomlinson's report and recommendation have been filed. Accordingly, this Court has reviewed the report and recommendation for clear error only.

Magistrate Judge Tomlinson's report thoroughly reviewed existing case law on the right of an attorney to enforce a charging lien pursuant to New York Judiciary Law § 475. *See id.* at 623–30. That statute provides:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor ... the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination.

The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475. Based on a close review of the language of this statute and relevant case law, Magistrate Judge Tomlinson concluded the following factors require denial of counsel's request in this case: (1) the parties in this action and the related New York State Department of Labor ("NYDOL") action are not identical; (2) counsel for Plaintiffs in this action did not appear as attorney of record in the NYSDOL action, nor do any of the limited exceptions to that requirement apply here; (3) counsel for Plaintiffs was aware of the risk that the NYSDOL could obtain a recovery prior to any judgment in the instant action; (4) New York Judiciary Law § 475 does not apply to NYSDOL proceedings; and (5) counsel for Plaintiffs failed to demonstrate the NYSDOL settlement was obtained as a result of their efforts. Dkt. No. 42 at 624–29. This·Court finds no clear error in this analysis, or in the report and recommendation overall.

For the foregoing reasons, this Court ADOPTS Magistrate Judge Tomlinson's report and recommendation in its entirety, and therefore DENIES the motion by Plaintiffs' counsel to enforce a charging lien pursuant to New York Judiciary Law § 475.

*SO ORDERED*

## REPORT AND RECOMMENDATION

A. KATHLEEN TOMLINSON, United States Magistrate Judge:

Plaintiffs Jose Galvez, Eligio Hernandez, Douglas Lund, Donald A. Morris, and William Schafer ("Plaintiffs") initiated this action on October 20, 2009. The Complaint alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 *et seq.* on the part of Defendants Aspen Corporation, Aspen Irrigation Inc., Management Consulting Laborers ("Aspen") and Donald and Ronald Adkins (the "Adkins" and, together with Aspen, the "Employers"). Plaintiffs have also asserted claims against the Employers' surety, Defendant Cincinnati Insurance Company ("Cincinnati Insurance" and, together with the Employers, the "Defendants"). Virginia & Ambinder, LLP ("V & A"), Plaintiffs' counsel, now seeks to enforce a charging lien upon Defendants pursuant to New York Judiciary Law § 475 based upon a settlement reached by the Defendants with the New York State Department of Labor ("NYSDOL") in a separate proceeding [DE 35] concerning the Plaintiffs' wages. For the reasons that follow, the Court recommends that V & A's motion be DENIED.

## I. BACKGROUND

The Plaintiffs were employed to perform construction-related work for Aspen from October 2008 until January 2009. Compl. ¶¶ 6–10. Plaintiffs allege that Defendants failed to pay them overtime at the prevailing wage rate in connection with a Public Works Project at the Bellport Golf Course in Bellport, New York (the "Project") during the relevant period. *Id.* ¶¶ 2–3. Defendants' contract for the Project required payment to laborers at the prevailing wage rate, including supplements. *Id.* ¶¶ 20–22. Defendant Cincinnati Insurance issued a labor and materials payment bond (the "Bond") in connection with the Project, pursuant to the terms of which Cincinnati Insurance assumed joint and several liability with the Employers for payment of wages due. *Id.* ¶¶ 16, 26. Based on these allegations, Plaintiffs sought overtime compensation from the Employers pursuant to the FLSA, *id.* ¶¶ 32–33, and prevailing wages and supplements from Cincinnati Insurance pursuant to the Bond and New York Labor Law § 220–g, *id.* ¶¶ 41–50.

Defendants, through their attorneys Devitt Spellman Barrett, LLP answered the Complaint on December 9, 2009 and asserted several affirmative defenses, including: (1) Plaintiffs received full payment for all work performed; (2) some or all of the employees were exempt under the FLSA; (3) accord and satisfaction; and (4) estoppel, etc. Answer [DE 4], ¶¶ 18–26. An Initial Conference was held on January 25, 2010, at which time this Court entered a Case Management and Scheduling Order. DE 7, 8.

At the June 8, 2010 Discovery Status Conference, Defendants' counsel advised the Court that a related criminal action was pending against the Defendants in state court. DE 10.[1] Thereafter, Defendants moved for a protective order "prohibiting the depositions of Ronnie and Donnie Adkins until the conclusion of the underlying criminal proceedings" because the depositions would infringe upon the Adkins' Fifth Amendment rights against self-incrimination since the state court proceeding involved the same underlying matters as the instant litigation. DE 11. Counsel for Plaintiffs did not oppose the motion on the condition that Plaintiffs be given the opportunity to depose the Adkins Defendants at the conclusion of the criminal action and before trial in this case. DE 12. The motion for protective order was therefore granted. DE 13.

On October 4, 2010, at Defendants' request, the discovery deadlines were extended and the Court entered an Amended Case Management and Scheduling Order. DE 15. Defendants sought another extension on November 19, 2010 because the criminal proceedings in state court remained pending. DE 16. That request was granted and the Court entered a Second Amended Case Management and Scheduling Order. *See* DE 17.

On March 11, 2011, Defendants requested a further extension. DE 18. In that request, Defendants advised the Court that settlement discussions in the criminal matter had ceased and the matter was likely to proceed to trial. *Id.* The Court granted Defendants' requests and held all deadlines in abeyance pending a status conference set for July 8, 2011. *See* Electronic Order dated March 14, 2011. At the July 8 status conference, Defendants' counsel advised the Court that settlement discussions in the criminal proceeding had resumed and that a resolution was expected in the next 60 to 90 days. DE 20. In light of the impact of the criminal proceeding on this case, the Court continued to stay discovery; however, the Court advised the parties that this case could not "remain in limbo for an extended period" and directed the parties to be prepared to proceed with discovery at the next status conference scheduled for October 6, 2011. *Id.* At the October 6, 2011 conference, the Court was advised that complications in the criminal matter were still preventing the depositions of both Adkins Defendants although the Plaintiffs had been deposed. DE 21.[2] A further conference was scheduled for January 12, 2012. *Id.*

At the January 12, 2012 Status Conference, Defendants' counsel reported that the state criminal proceeding had been resolved with the entry of a plea and that the NYSDOL proceeding was being han-

---

**1.** The record is not clear regarding which Defendants the criminal action was initiated against.

**2.** Defendants' counsel advised the Court at that time that one of the Defendants was about to undergo heart surgery to replace a valve and that the criminal case would likely be adjourned again. However, counsel also noted that certain audits were being completed which might assist with a potential resolution. *See* DE 21.

dled in tandem with the resolution of the criminal case. DE 22. The Civil Conference Minute Order from the January 12, 2012 conference contained the following statement: "Counsel for both sides agree that if the DOL action is resolved, that outcome may well result in a resolution of the current matter as well.... I am putting this case over for a telephone conference on February 15 so that the parties can advise if the instant case has been resolved." *Id.*

On February 14, 2012, Defendants' counsel filed a letter on ECF requesting an adjournment of the status conference scheduled for the next day. DE 23. In that letter, counsel stated:

> ... since the last conference on January 12, 2012, defendants have reached a settlement with the Department of Labor and are working with plaintiff to reconcile the resolution of that administrative matter with the instant civil lawsuit.

> In light of the foregoing, with the consent of the plaintiffs, defendants respectfully request that tomorrow's telephone conference be adjourned until the end of next week.

*Id.* The next conference ultimately went forward on March 2, 2012 at which time Defendants' counsel advised the Court that the New York DOL proceeding had been resolved. In the Civil Conference Minute Order posted as a result of that conference, the Court noted the following information:

> 1. Defendants' counsel reported today that one of the corporations pleaded guilty to a violation in the criminal proceeding without an allocution. In addition, defendants' counsel stated that the Department of Labor action has been resolved and payments have been made to the plaintiffs through the auspices of the Department of Labor.

Plaintiffs' counsel stated that his office was not aware of any payments being made in the Department of Labor investigation. On that basis, counsel added that he was not aware whether the plaintiffs had signed releases and whether the DOL resolution involved only the state prevailing wage claims or the federal claims for overtime as well. Counsel also noted that there is an issue of payment of plaintiffs' counsel fees.

According to defendants' counsel, the DOL resolution encompassed both the prevailing wage claims and the overtime claims. However, defendants' counsel does not know whether the plaintiffs signed releases.

> 2. In light of the foregoing information, I have directed counsel for both sides to engage in a good faith meet-and-confer to determine whether the instant case can be finally resolved....

DE 25.

When the Court spoke with the parties again on March 27, 2012, counsel represented that they had not yet settled the case but that they had continued to make progress. DE 28. The Court reiterated that this matter had been complicated by the related criminal proceeding and the NYSDOL action which had apparently reached its own resolution with the Defendants, which, as the Court noted, was "not known to plaintiffs' counsel until recently." *Id.*

On April 16, 2012, counsel for the Plaintiffs reported that the parties had not reached a settlement and that only three of the five named Plaintiffs were interested in pursuing this litigation in the aftermath of the NYSDOL settlement. DE 29. Since the last conference, a settlement proposal was made and rejected and a subsequent proposal had been made by the Plaintiffs just prior to the conference and Defendants' counsel asked for some addi-

tional time to have her clients consider the proposal. That request was granted. The Court gave the parties two additional weeks to work on a settlement, but warned that if a resolution was not reached within that time, the Third Amended Case Management and Scheduling Order which accompanied the conference Minute Order that day [DE 30] would automatically become effective. *Id.* Defendants' counsel notified the Court on May 1, 2012 that the parties had not reached a settlement [DE 31] as a result of which the Third Amended Case Management and Scheduling Order became operational. *See* Electronic Order dated May 2, 2012.

On June 12, 2012, Plaintiffs' counsel filed a letter request to Judge Kuntz seeking a pre-motion conference for the purpose of filing a motion to enforce a lien on the action for the reasonable value of attorneys' fees pursuant to New York Judiciary Law § 475—a request which Defendants opposed. *See* DE 32 and 33. Judge Kuntz held a pre-motion conference on V & A's anticipated motion to enforce a lien and stayed all proceedings pending resolution of the motion. *See* Electronic Orders dated July 18, 2012 & July 20, 2012. Thereafter, in accordance with the briefing schedule set by Judge Kuntz, V & A filed the instant motion. DE 35.

## II. DISCUSSION

■ At the outset, the Court notes that it has been unable to find any case in the Second Circuit which is on all fours with this action, notwithstanding the plethora of FLSA cases. The motion brought by Plaintiffs' counsel requires the Court to answer the following question: When defendants in a private multi-plaintiff FLSA action settle a related NYSDOL proceeding involving the same/similar claims brought by some (if not all) of the plaintiffs in the pending private FLSA action, can

the plaintiffs' attorney hold the defendants liable for attorneys' fees by asserting a charging lien under New York Judiciary Law § 475? The Court concludes that Plaintiffs' attorneys here cannot assert such a lien against the Defendants.

### A. The Parties' Contentions Regarding the Charging Lien

#### 1. *Arguments of Plaintiffs' Counsel*

V & A seeks compensation for the "time, expertise and effort expended on behalf of the plaintiffs throughout this protracted litigation." V & A Memorandum of Law in Support of Motion to Enforce a Charging Lien ("V & A Mem.") [DE 36] at 1. Counsel argues that Defendants utilized the fruits of V & A's substantial discovery efforts in this case over a two-year period to obtain a settlement with the NYSDOL. *Id.* at 2. According to counsel, the majority of the discovery was requested by the Defendants, including depositions of all five named Plaintiffs, who had to travel to Suffolk County from different regions of the country for that purpose—the expense of which was borne by V & A, including JetBlue airline tickets for Plaintiffs Douglas Lund and William Schafer. *Id.; see* Declaration of Lloyd R. Ambinder, attached as Ex. 1 to the V & A Mem. ("Ambinder Decl."), ¶¶ 6–7. Plaintiffs' counsel also cites the multiple days spent preparing the Plaintiffs for their depositions as well as those spent defending the depositions. V & A Mem. at 2.

Once all this time was spent by Defendants taking discovery for the benefit of their clients, Plaintiffs' counsel argues, the Defendants then moved for a protective order—granted by the Court—which prevented Plaintiffs from taking depositions of the Defendants for several months. *Id.;* Ambinder Decl. ¶ 9. According to Attorney Ambinder, Defendants sought this protection "due to a criminal investigation under-

taken by the Suffolk County District Attorney's Office involving identical issues raised in this action, including but not limited to one count for failure to pay prevailing wages, twelve counts of offering a false statement for filing, and one count of scheme to defraud." V & A Mem. at 2 (referencing the September 9, 2010 letter from Defendants' counsel to the Court [DE 11] stating the specific criminal charges pending against Aspen as well as Ronnie and Donnie Adkins). Plaintiffs' counsel takes the position that the Defendants took advantage of the information obtained in the Plaintiffs' depositions to assist them in defending the criminal investigation, all to the detriment of V & A. *Id.* Taking that argument one step further, Plaintiffs' counsel asserts that the Defendants were able to reach a settlement with the NYSDOL by using the evidence collected in this case. Moreover, according to counsel,

> Defendants did not inform V & A that it [sic] was entering into this settlement until after the settlement was completed. [Ambinder Dec., ¶ 12]. The settlement reached with the Department of Labor, on behalf of the Plaintiffs in this action, fails to consider V & A's lien for the substantial expenses undertaken in the action, despite Defendants' clear and undeniable knowledge that Plaintiffs were represented by V & A in this action, and that any recovery to Plaintiffs was thus subject to a charging lien pursuant to New York Judiciary Law § 475. V & A respectfully submits that New York Judiciary Law § 475 was enacted to prevent this exact circumstance.

*Id.*

### 2. The Defendants' Contentions

Some time after the Project at the Bellport Country Club was completed, some of the Plaintiffs contacted the NYSDOL to file a complaint, according to the Defendants, claiming that they were paid less than the prevailing wage and that they were not paid overtime. *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Request for a Charging Lien [DE 38] ("Defs.' Mem.") at 2. Defendants maintain that Plaintiffs' contact with the DOL occurred prior to the commencement of this lawsuit. *Id.* at 1. Defendants further assert, albeit upon information and belief, that sometime after submitting a claim to the NYSDOL, Plaintiffs "contacted and retained the firm of V & A" and that the firm was referred to the Plaintiffs "by an employee of the DOL, after Plaintiffs filed their DOL claims." *Id.* at 2. According to the Defendants, V & A "did not make a single appearance on behalf of its clients before the DOL" and, instead, "[e]mployees of the DOL fully represented the plaintiffs' interests in the matter before the New York State Department of Labor." *Id.* at 1. Defendants' counsel goes on to note that:

> The DOL settled the claims on behalf of all the workers who were on the site following extensive negotiations with defense counsel herein, the District Attorney's Office and defendants' criminal attorneys, Perini & Hoerger. The DOL forwarded checks in various amounts to the claimants in that matter.

*Id.*

When the parties did not reach a settlement in this action, Defendants' counsel points out the Court's directive that the existing scheduling order was in effect and that the depositions of all defendants were to be completed by May 22, 2012, with a final discovery deadline of May 31, 2012. *Id.* at 1–2. The parties were directed to file their proposed Joint Pre–Trial Order on ECF by July 13, 2012. According to Defendants' counsel, "Defendants were ready and willing to move forward and were advised by Plaintiffs' counsel that

Plaintiffs were not going forward." *Id.* at 2. Plaintiffs' counsel filed a letter on June 12, 2012 seeking a pre-motion conference before Judge Kuntz for purposes of enforcing a lien on the settlement funds sent to the claimants by the NYSDOL. *Id.*

The Defendants' version of communications with Plaintiffs during the ongoing NYSDOL investigation differs markedly from the Plaintiffs'. In the opposition papers, Defendants' counsel specifically addresses those communications:

4. At some time during the discovery period, at or around the time of plaintiffs' depositions, I spoke with plaintiffs' counsel, Lloyd Ambinder with regard to settling the instant matter and the DOL proceeding. At that time, my clients had to respond to the instant federal litigation, the DOL investigation and criminal charges pending for the alleged failure to pay plaintiffs prevailing wage. I asked Mr. Ambinder if he wanted to be involved in "global" settlement negotiations in order to resolve the instant matter, the DOL and criminal proceedings. Mr. Ambinder advised in no uncertain terms that he was not interested in appearing or negotiating on behalf of his clients in the DOL proceeding. He conveyed to me that he believed that each matter should be resolved separately, stating something to the effect of letting the chips fall where they may.

5. As a result of my conversation with plaintiffs' counsel, I treated the matters as if they were separate, believing that when and if the DOL matter was resolved, the federal litigation would continue to go forward. I had no reason to think otherwise. I approached plaintiffs' counsel with the idea of settling the matters globally, because I believed that that would have been in my clients' best interests and would have been more efficient.

Declaration of Jeltje DeJong, Esq. in Opposition to Plaintiffs' Application for a Charging Lien ("DeJong Decl.") [DE 37] ¶¶ 4–5. According to Defendants' counsel, the settlement was reached primarily when, "as a result of Defendants' criminal counsel's thorough investigation, Defendants became aware that some of the Plaintiffs herein had given false information to the DOL and quite probably to the District Attorney's Office." Defs.' Mem. at 3. Defendants point out that the individuals who certified the payroll for Aspen with regard to the Project in Bellport were Plaintiffs William Schafer and Donald Morris. *Id.* at 2. Counsel added that Aspen "was able to show the DOL and the District Attorney that Plaintiffs Shafer and Morris fraudulently submitted certified payroll records for days that they were not on site." *Id.* at 3; DeJong Decl. ¶ 7. Ultimately, Defendants argue that V & A is not entitled to fees in this federal case since the Plaintiffs "have not prevailed and have basically abandoned their claims." DeJong Decl. ¶ 6.

With this background in mind, the Court now turns to an analysis of the law relied upon by the parties and as applied from its own independent research.

**B. New York Judiciary Law § 475**

The legal theory under which V & A asserts entitlement to compensation is New York Judiciary Law § 475. The Court begins its analysis with the text of the provision under which V & A asserts its right to payment. The statute provides, in pertinent part, as follows:

From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, *except a department of labor,* or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolu-

tion including, but not limited to, mediation or arbitration, or the provision of services in a settlement negotiation at any stage of the dispute, the attorney who appears for a party has a **lien upon his or her client's cause of action,** claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

New York Judiciary Law § 475 (emphasis supplied). "A lien created by Section 475 is fully enforceable in federal court 'in accordance with its interpretation by New York Courts.'" *Louima v. City of New York,* No. 98–CV–5083, 2004 WL 2359943, at *57 (E.D.N.Y. Oct. 18, 2004) (quoting *Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 449 (2d Cir.1998)). The parties focus on various phrases within the wording of § 475. The Court now considers each portion of the statutory language at issue.

### 1. "The Attorney Who Appears for a Party"

Plaintiffs' counsel argues that the Defendants' settlement with the Plaintiffs through the NYSDOL fails to recognize V & A's charging lien on the action for the reasonable value of services rendered. V & A Mem. at 3. Further, Plaintiffs' counsel maintains that pursuant to § 475, such lien "cannot be affected by any settlement between the parties before or after judgment, final order or determination." *Id.* at 3 (quoting New York Judiciary Law § 475).

In opposition, Defendants argue that V & A is not entitled to a charging lien on the settlement proceeds in the NYSDOL proceeding since V & A did not represent any of the Plaintiffs in that proceeding. Defs.' Mem. at 4–5.

The Court notes an immediate distinction here, namely, the "parties" to the settlement. In the instant litigation, the Plaintiffs are five former employees of Aspen. The Defendants are the corporate entities including Aspen, as well as the Adkins brothers and Cincinnati Insurance. However, in the NYSDOL administrative proceeding, the parties were the Department of Labor (representing all Aspen employees on site at the Project) and only some of the Defendants. According to the Defendants, Cincinnati Insurance was not a party to that proceeding. *Id.* at 3 n. 2. In addition, V & A did not appear as attorney of record in the NYSDOL proceeding, nor is there any evidence that V & A asserted any lien in that action or ever communicated with the NYSDOL while the action was pending.

 As the Defendants point out, a charging lien under § 475 is for the benefit of an "attorney of record" only. Defs.' Mem. at 4 (citing *Rodriguez v. City of New York,* 66 N.Y.2d 825, 827, 498 N.Y.S.2d 351, 489 N.E.2d 238 (1985)). V & A's failure to appear in the NYSDOL proceeding is grounds for denying the motion here. An attorney is only entitled to a charging lien where "there has been an appearance by that attorney in the action which creates or is the source of funds against which the lien is asserted." *Chevron Corp. v. Donziger,* No. 11 Civ. 0691, 2011 WL 2150450, at *3 (S.D.N.Y. May 31, 2011) (quoting *Weg and Myers, P.C. v. Banesto Banking Corp.,* 175 A.D.2d 65, 66, 572 N.Y.S.2d 321 (1st Dep't 1991)); *see Haser v. Haser,* 271 A.D.2d 253, 255, 707 N.Y.S.2d 47 (1st Dep't 2000) ("... Judicia-

ry Law § 475 is designed to attach only the specific proceeds of the judgment or settlement in the action where the attorney appeared."). Thus, courts will not grant a charging lien unless the attorney appeared for the client by "participating in a legal proceeding on the client's behalf or by having his [or her] name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter." *Picciolo v. State*, 287 A.D.2d 721, 722, 732 N.Y.S.2d 60 (2d Dep't 2001) (quoting *Cataldo v. Budget Rent A Car Corp.*, 226 A.D.2d 574, 641 N.Y.S.2d 122 (2d Dep't 1996)); *accord Louima*, 2004 WL 2359943, at *57. V & A acknowledges that it did not appear in the NYSDOL proceeding in any capacity. *See* V & A Reply Mem. at 9 ("... V & A does not purport to have appeared in the Department of Labor investigation ....").

■ An attorney's representation of a client in one proceeding does not entitle the attorney to a charging lien over proceeds in a separate case or proceeding where the attorney did not appear as counsel. *See Chevron Corp.*, 2011 WL 2150450, at *2–3 (holding that attorney did not have a lien over Ecuadorian judgments despite his contingency fee agreement with the plaintiffs in those lawsuits since he did not appear as counsel in the actions in which the judgments were entered); *Cabukyuksel v. Ascot Properties, LLC*, 99 A.D.3d 405, 406, 952 N.Y.S.2d 3 (1st Dep't 2012) (holding that law firm was not entitled to a charging lien on settlement funds obtained in one action even though it represented the plaintiff in a related action); *Chadbourne & Parke, LLP v. AB Recur Finans et al.*, 18 A.D.3d 222, 223, 794 N.Y.S.2d 349 (1st Dep't 2005) (holding that law firm was not entitled to charging lien over proceeds obtained in a distinct action); *Surdam v. Marine Midland Bank N.A.*, 198 A.D.2d 578, 578, 603 N.Y.S.2d 233 (3d Dep't 1993).[3]

As V & A points out, courts have made exceptions to the rule that the attorney must appear in the action which creates the source of funds against which a lien is sought, but those cases involved circumstances different from the situation presented here. For example, in *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 657, 602 N.Y.S.2d 788, 622 N.E.2d 288 (1993), the court permitted an attorney to assert a charging lien where a plaintiff discharged the attorney who represented him in state court and then hired new attorneys who filed a separate action on the same claim in federal court. The court explained that if it were to rule otherwise "the client and the successor attorney could easily frustrate the remedial purposes of the statute by the simple expedient of instituting a new action, thereby extinguishing the prior action, and leaving the discharged attorney without security ...." *Id.* at 658, 602 N.Y.S.2d 788, 622 N.E.2d 288; *see also Neimark v. Martin*, 7 A.D.2d 934, 935, 183 N.Y.S.2d 812 (2d Dep't 1959) (allowing attorney to assert lien in action in which he did not appear where action was a "logical" extension of

3. It is unclear to the Court whether the causes of action asserted in the NYSDOL proceeding are even identical to those asserted here. Specifically, the record does not reflect (1) which Plaintiffs were involved in the NYSDOL proceeding: (2) whether the NYSDOL resolution involved FLSA claims or was limited to New York Labor Law claims, (3) whether the claims against Cincinnati Insurance were covered, although Defendants state that they were not; and (4) what time frame was covered in the NYSDOL action. As of the March 2, 2012 conference, V & A was unsure "whether the DOL resolution involved only the state prevailing wage claims or the federal claims for overtime as well." DE 25. Even if the claims were not identical, the fact remains that V & A did not appear in the NYSDOL proceeding.

the services rendered by the attorney); *In re Falk*, 128 Misc. 856, 858, 220 N.Y.S. 224 (Sup.Ct.N.Y.Co.1927) (same). The concern raised in *Cohen*—that a client and his or her new attorney could file a new action in order to destroy the first attorney's rights—is not present here. First, Defendants claim—and V & A does not dispute—that the Plaintiffs filed their NYSDOL complaints prior to initiating this lawsuit. *See* Defs.' Mem. at 1. Thus, there can be no suggestion that the NYSDOL proceeding was a mechanism for destroying V & A's rights. Second, this case does not involve a separate lawsuit by a different attorney, but rather a proceeding by the NYSDOL, a state agency entrusted with the enforcement of the state's labor laws. Indeed, it is important to note that V & A contemplated this very situation at the time it took on Plaintiffs' representation and included the following provision in its retainer agreement with Plaintiffs:

> In the event that the New York Department of Labor or the District Attorney is successful in obtaining a recovery prior to the completion of this action, *then V & A will discontinue the action.* Client will not be charged for costs associated with this action in the event that a prior recovery is obtained by the New York Department of Labor or the District Attorney.

Reply Declaration of Lloyd R. Ambinder [DE 39], Ex. J (emphasis supplied).[4] This essential communication between V & A and its clients reflects that V & A was clearly aware of the risk it was undertaking, namely, that the NYSDOL could obtain a recovery prior to any judgment in the instant litigation. Significantly, the unambiguous language in the retainer agreement states that if either the NYS-

DOL or the District Attorney obtains a recovery for the Plaintiffs, V & A *will discontinue* the lawsuit now before this Court. As such, V & A cannot now be heard to complain that the NYSDOL proceeding frustrated its rights.

Plaintiffs' counsel goes on to argue that the Defendants did not inform V & A that they were entering into the settlement until after the settlement was completed. Defendants' counsel, on the other hand, although not refuting this assertion, states that Plaintiffs' counsel wanted no part of the NYSDOL proceeding and unequivocally took the position that each matter should be resolved separately—notwithstanding the desire of Defendants to effect a global settlement. In his reply papers, Plaintiff's counsel ultimately asserts that "when and whether V & A was informed of the potential NYSDOL settlement is irrelevant" because the larger picture is that V & A's expertise and efforts were what caused the favorable settlement in the first instance. Pls.' Reply Mem. at 2. In attempting to minimize Defendants' "counsel of record" argument, V & A further asserts that the Defendants fail to recognize the "unambiguous language of Section 475" that the lien "attaches to the client's *'cause of action'* instead of just the action." *Id.* In that instance, Plaintiffs' counsel states, the "proceeds, wherever found, are subject to" the lien. *Cohen v. Grainger*, 81 N.Y.2d at 658, 602 N.Y.S.2d 788, 622 N.E.2d 288. V & A's reliance on *Cohen v. Grainger* is misplaced because, as discussed, the facts in that case are distinguishable. There, the original attorney was discharged by the client. *Id.* at 657, 602 N.Y.S.2d 788, 622 N.E.2d 288. In addition, the actions occurred in state and federal courts, the parties were the same

---

4. The Retainer Agreement attached to the Ambinder Declaration was signed by Plaintiff Eligio Hernandez. V & A implies, and the Court assumes, that the retainer agreements signed by the other Plaintiffs contain similar language. *See* V & A Reply Mem. at 8.

and the causes of action were identical (as compared to different parties and an administrative agency proceeding here where there is no confirmation whether specific FLSA claims were resolved in that proceeding). In addition, when the attorney discovered that the new firm had taken over the case, the counsel being discharged notified opposing counsel that he would be seeking his fee at an appropriate time. *Id.* at 659, 602 N.Y.S.2d 788, 622 N.E.2d 288.

V & A maintains that it is entitled to a lien, not because of the settlement in the NYSDOL, but because of the efforts expended in the instant case, which efforts V & A believes directly caused the settlement. Not having appeared in the NYSDOL proceeding, however, V & A is not entitled to a lien on the settlement proceeds obtained in that proceeding. Likewise, Plaintiffs have not been awarded damages under the FLSA in the current action, there is no settlement, no judgment has been entered and the case remains open. Given the fact that the services rendered by V & A in this action have not created any "proceeds," there is nothing to which a lien can attach. *See Surdam,* 198 A.D.2d at 578, 603 N.Y.S.2d 233.

### 2. "An Action ... in Any Court or Before Any State, Municipal or Federal Department Except a Department of Labor ..."

New York Judiciary Law § 475 applies to "an action, special or other proceeding in any court or before any state, municipal or federal department, *except a department of labor* ...." *Id.* (emphasis supplied). Although there do not appear to be any cases interpreting the exception for department of labor proceedings, such proceedings certainly appear to be exempt under the plain language of the statute. Indeed, V & A acknowledges that New York Judiciary Law § 475 does not apply to an NYSDOL proceeding. *See* Pls.' Reply Mem. [DE 40] at 9 ("Defendants are correct that according to the plain language of the statute, an attorney who appears for a party in a *Department of Labor investigation* would not be entitled to a lien.") (emphasis in original).

Although V & A acknowledges that NYSDOL proceedings are exempt from the charging lien statute, the firm nevertheless argues that it may assert a lien because it seeks fees for work performed in *this* action, not the NYSDOL proceeding. *See id.* Once again, this contention underscores a fundamental problem with V & A's position: there is no "verdict, report, determination, decision, award, settlement, judgment or final order in [V & A's] client[s'] favor" in *this* litigation upon which a lien may be asserted. *See* New York Judiciary Law § 475. Although "[i]t is well-settled that, under section 475, an attorney's charging lien comes into existence ... upon commencement of the cause of action or proceeding ... the statutory provision has limited such lien rights to outcomes where proceeds have been obtained in a client's favor" because "there must be proceeds from the litigation upon which the lien can affix." *See Banque Indosuez v. Sopwith Holdings Corp.,* 98 N.Y.2d 34, 44, 745 N.Y.S.2d 754, 772 N.E.2d 1112 (2002) (internal quotations omitted); *accord Chevron Corp.,* 2011 WL 2150450, at *3; *Burrell v. City of Binghamton,* No. 86–CV–1062, 1989 WL 29878, at *4 (N.D.N.Y. March 24, 1989); *Chadbourne & Parke, LLP v. AB Recur Finans,* 18 A.D.3d 222, 223, 794 N.Y.S.2d 349 (1st Dep't 2005). The only proceeds to which a lien could affix are the settlement payments made in the NYSDOL proceeding, and, by the very wording of the stat-

ute, such a lien is precluded here.[5]

■■ There are additional grounds for denying V & A's motion. V & A has failed to demonstrate that the settlement was obtained as a result of V & A's efforts. A charging lien is "enforceable only against the portion of the fund created ... as a result of the attorney's efforts...." *Rothfeder v. City of New York*, 48 A.D.3d 234, 235, 851 N.Y.S.2d 430 (1st Dep't 2008); *accord Queller, Fisher, Washor, Fuchs & Kool, LLP v. Law Offices of Lawrence P. Biondi*, 94 A.D.3d 1127, 942 N.Y.S.2d 793 (2d Dep't 2012) (refusing to impose lien where proceeds were not created as a result of law firm's efforts); *Chadbourne & Parke, LLP*, 18 A.D.3d at 223, 794 N.Y.S.2d 349 (same). V & A makes several conclusory statements regarding its contribution to the NYSDOL settlement. For example, V & A states the following:

> ... Defendants were *able to benefit from* the substantial amount of time V & A spent prosecuting this case, at V & A's expense.

V & A Mem. at 6 (emphasis supplied).

V & A is entitled to a charging lien for the time, expertise and effort expended prosecuting Plaintiffs' cause of action, the fruits of which *undoubtedly resulted in* the favorable DOL settlement.

V & A Reply Mem. at 2 (emphasis supplied).

> Defendants were able to use the evidence and deposition testimony obtained in the instant action, at V & A's expense, to benefit their own position in the criminal and DOL investigation.

*Id.* at 4.

> V & A seeks fees for the considerable time and expense underwent prosecuting Plaintiffs' claims throughout the

three-year span of *this* action, the fruits of which Defendants *undoubtedly used to resolve* the Department of Labor and criminal investigations.

*Id.* at 9 (emphasis supplied).

There is no indication **how** V & A's efforts purportedly achieved the end result in the NYSDOL. Defendants, who, unlike V & A, actually participated in that proceeding, state that the driving force to achieve the settlement was information gleaned from the investigation conducted by Defendants' criminal defense attorneys, which, according to Defendants' counsel (and not refuted by V & A), revealed that certain Plaintiffs fraudulently submitted certified payroll records. Defs.' Mem. at 3. This information is consistent with statements made on the record at the January 12, 2012 Status Conference before this Court which noted that the NYSDOL proceeding was "being handled in tandem with the outcome of the criminal proceedings and the defendants [were] in the process of resolving that matter as well." DE 22. Moreover, notwithstanding the statements quoted above, V & A appears to admit that its position is speculative by virtue of the language in which it couches its argument. At one point, Plaintiffs' counsel states that Defendants *"likely submitted* evidence and testimony obtained in this action to resolve the Department of Labor investigation ...." V & A Mem. at 2. At another juncture, V & A asserts that *"[p]resumably,* Defendants thereafter took advantage of the testimony and evidence obtained through the Plaintiffs' depositions in this action, to aid them in defending against the criminal investigation, to the detriment of V & A." *Id.* The Court does not dispute that the Plaintiffs'

---

**5.** It is unclear whether the settlement proceeds would even cover the $48,299.233 in

fees and $3,583.25 in costs that V & A seeks.

deposition testimony *may have* been utilized in the NYSDOL proceeding. Unfortunately, there is no evidence in the record of the instant action supporting the premise that V & A's efforts led to Plaintiffs' settlement in the NYSDOL. Consequently, V & A is not entitled to a lien on the settlement funds obtained in that proceeding. Because the Court finds that V & A is not entitled to a charging lien, there is no need to address V & A's other arguments concerning the reasonableness of its rates.

Finally, there may be some misunderstanding or confusion on V & A's part concerning the source of its entitlement to legal fees. V & A seeks an award of attorney's fees and costs in the amount of the hours it expended in this matter pursuant to the fee-shifting provision of the FLSA, 29 U.S.C. § 216(b) [6] and states that "Defendants have a clear and undeniable burden to reimburse V & A for attorneys' fees and costs." *See* V & A Reply Mem. at 8. The FLSA fee-shifting statute provides for the payment of attorney's fees to a successful *plaintiff,* but does not create a right in favor of V & A, Plaintiffs' counsel, to that payment. *See* 29 U.S.C. § 216(b). In *Burrell v. City of Binghamton,* No. 86-CV-1062, 1989 WL 29878 (N.D.N.Y. March 24, 1989), the court dealt with a similar issue. There, the court entered a judgment in favor of the plaintiff on her Title VII claim and awarded her back pay, interest, and attorney's fees and costs. *Id.* at *1. After the judgment was entered, the plaintiff, without her attorney's knowledge or consent, agreed to settle the case with the defendant in the amount of the back pay and interest awards ($9,063.99) in exchange for immediate payment. *Id.* Plaintiff's attorney then sought to enforce a charging lien pursuant to New York Judiciary Law § 475 in the amount of the Title VII attorney's fee award ($26,022.50). *Id.* Finding that the fee-shifting provision of Title VII "did not create a personal right in favor of counsel independent of the client," the court rejected the attorney's claim for a charging lien on those funds. *Id.* at *3; *see Gray v. Dummitt,* No. 06-CV-322, 2007 WL 6925690, at *7 (E.D.N.Y. Dec. 1, 2007) (holding that fee-shifting statute "does no more than create a right for the client—it creates no right for the attorney as such") *rejected on other grounds,* 2009 WL 210865, at *1 (E.D.N.Y. Jan. 9, 2009). The Court finds the reasoning of *Burrell* equally applicable to this FLSA case and concludes that the FLSA does not give V & A a right to fees. *See Imbeault v. Rick's Cabaret Int'l Inc.,* No. 08-CV-5458, 2009 WL 2482134, at *10 (S.D.N.Y. Aug. 13, 2009) (noting that attorney's fees are awarded to a prevailing *plaintiff* in an FLSA case); *Estrella v. P.R. Painting Corp.,* 596 F.Supp.2d 723, 724-25 (E.D.N.Y.2009) (same).

In light of the hours, fees and expenses vested in this case by V & A—an issue not in itself in dispute—a determination here which results in V & A walking away from this case with no reimbursement is admittedly a less than satisfying outcome for Plaintiffs' counsel. However, the Court finds that the appropriate source from which to seek these funds is not the Defendants. Rather, V & A's recourse is in the retainer agreement the firm signed with

---

**6.** V & A further states that fees and costs "are also available under the NYLL with respect to Plaintiffs' state law claims." *See* V & A Mem. at 6. Like the FLSA, the New York Labor Law does contain a fee-shifting provision. New York Labor Law §§ 198(1–a); 663(1). Plaintiffs do not assert any claims against the Employers under the New York Labor Law. The only mention of the statute arises in the context of purported grounds for imposing liability on the suretor Defendant, Cincinnati Insurance. Compl. ¶ 47. Moreover, on reply, V & A refers only to the federal statute. *See* V & A Reply Mem. at 8.

its clients. That prospect may be complicated by the contingency language concerning any recovery to the Plaintiffs achieved by the NYSDOL. V & A may otherwise have a remedy premised on a quantum meruit theory against its clients, *Chadbourne & Parke, LLP,* 18 A.D.3d at 223, 794 N.Y.S.2d 349, but that is an issue for another day since V & A has not sought such relief here.

### III. CONCLUSION

Based on the foregoing information, this Court respectfully recommends to Judge Kuntz that V & A's motion to enforce a charging lien be DENIED.

### IV. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable William F. Kuntz, II, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Kuntz prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Beverly v. Walker,* 118 F.3d 900, 901 (2d Cir.1997), *cert. denied,* 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996).

**SO ORDERED.**

July 18, 2013.